**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARINA AMOROSO-LEVATO, individually and as mother and next friend of JOHN DOE, a minor, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | No. 06 C 6201 |
| | ) | |
| BATAVIA SCHOOL DISTRICT 101, BATAVIA BOARD OF EDUCATION, ROTOLO MIDDLE SCHOOL, MATTHEW MYERS, DONALD McKINNEY, and JACK BARSHINGER, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is plaintiff's motion for a temporary restraining order. For the following reasons, the motion, which is also treated as a motion for a preliminary injunction, is denied.

**BACKGROUND**

Plaintiff Marina Amoroso-Levato filed this 42 U.S.C. § 1983 action on behalf of her son, who is a minor, against defendants Batavia School District, the Batavia Board of Education, Rotolo Middle School, Matthew Myers, Donald McKinney, and Jack Barshinger. At issue is a play entitled "Fuggedaboudit: A Little Mobster Comedy," which is planned to be performed by students at Rotolo Middle School on Friday, November 17, 2006 and Saturday, November 18, 2006. Myers is a teacher at the school and also the

playwright; McKinney is the school principal; and Barshinger is the superintendent of the school district.[1]  Plaintiff contends that the presentation of the play violates her son's equal protection rights because the play (the script of which is attached to the complaint) contains "racist ethnic stereotyping and [an] ethnically derogatory portrayal" of Italian-Americans.  (Compl. ¶ 18.)[2]

Plaintiff seeks to temporarily restrain and enjoin the rehearsals and performances of the play "or otherwise subjecting" her son "or other similarly situated individuals or other Rotolo Middle School students" to the play.  (Compl. at 4-5.)  Oral argument was held today, November 15, 2006, and the court denied plaintiff's motion in open court.  This opinion is intended to amplify the court's remarks at today's hearing.

## DISCUSSION

Here, defendants had notice of the motion for a temporary restraining order in addition to the opportunity to brief their

---

[1]/  In this opinion, we treat defendants as a group for simplicity's sake and in view of our ultimate ruling.  We realize that the complaint is problematic in that it names an apparently non-suable entity, Rotolo Middle School, and in that it fails to indicate a factual basis for the claims against the individual defendants.

[2]/  Plaintiff also summarily invokes in the complaint various statutes that have no application to the allegations.  42 U.S.C. § 1981 deals with discrimination in the making of contracts, which is not involved here.  Title IX of the Civil Rights Act prohibits gender discrimination, but the thrust of plaintiff's complaint is racial or national origin discrimination.  Plaintiff also invokes "40 U.S.C. § 2000," a statute that does not exist.  Plaintiff may have meant to refer to "42 U.S.C. § 2000e," but that statute is inapplicable because it deals with employment discrimination.  Plaintiff has alleged violations of Illinois law, but those are not cognizable under 42 U.S.C. § 1983, see, e.g., Germano v. Winnebago County, 403 F.3d 926, 929 (7th Cir. 2005), and, in the absence of a viable federal claim, the court would decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

- 3 -

opposition and to appear for oral argument. In light of these circumstances, we will treat plaintiff's motion for a temporary restraining order as one for a preliminary injunction. See 11A Charles Alan Wright et al., Federal Practice and Procedure § 2951, at 254 (2d ed. 1995) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements.").

The requirements for a temporary restraining order are the same as for a preliminary injunction. Long v. Bd. of Educ., Dist. 128, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001). Thus, to obtain injunctive relief, plaintiff must show that (1) no adequate remedy at law exists; (2) plaintiff will suffer irreparable harm absent injunctive relief; (3) the irreparable harm plaintiff will suffer absent injunctive relief outweighs the irreparable harm defendant will suffer if relief is granted; (4) the plaintiff has a reasonable likelihood of prevailing on the merits; and (5) the injunction will not harm the public interest. Somerset House, Inc. v. Turnock, 900 F.2d 1012, 1014-15 (7th Cir. 1990). "The plaintiff must satisfy each of these elements to prevail." Id. at 1015. Each of these factors counsel against granting plaintiff's motion.

First, and foremost, plaintiff does not have a reasonable probability of prevailing on the merits—the court estimates that

- 4 -

plaintiff would not prevail under any circumstances. As discussed above, plaintiff's only colorable claim is an equal protection claim pursuant to 42 U.S.C. § 1983, and that claim is plagued by a number of defects.

The Fourteenth Amendment provides that a State shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, cl. 1. Ordinarily, a classification does not violate the Equal Protection Clause "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 320 (1993) (citing Nordlinger v. Hahn, 505 U.S. 1, 11 (1992)). However, "heightened scrutiny" applies in cases where the challenged classification burdens a fundamental right or it involves a suspect class. Varner v. Monohan, 460 F.3d 861, 865 (7th Cir. 2006) (citing Marshall v. United States, 414 U.S. 417 (1974)). Plaintiff appears to be arguing that heightened scrutiny is warranted because Italian-Americans are a suspect class. (Pl. TRO Mot. ¶ 8.)

While plaintiff has made references to historical discrimination against Italian-Americans in the pleadings and in open court, plaintiff's equal protection theory is not pellucid at this stage in the proceedings. As best the court can discern, plaintiff is arguing that the act of putting on the play constitutes an equal protection violation either because (a) it is

an act of intentional discrimination against Italian-Americans; or (b) it has a disparate impact on Italian-Americans by promoting "stereotypes, innuendoes, ethnic humor and discrimination." (Pl. TRO Mot. ¶ 8.)

With respect to the first theory, plaintiff has not set forth sufficient evidence that would enable the court to conclude that the play is an act of intentional discrimination. Defendants maintained in open court that their intent in putting on the play is to encourage students to look beyond stereotypes and to focus on persons' behavior rather than their ethnicity. Plaintiff did not tender a plausible response to this explanation of the play and did not otherwise set forth facts indicating that the decision to put on the play is motivated by discriminatory animus. While the court is mindful that plaintiff has not had the opportunity for discovery, plaintiff is still obliged to set forth some facts, beyond the language and depictions in the play that are subject to competing, reasonable interpretations, to support an allegation of discriminatory intent.

With respect to plaintiff's second theory, a violation of the Equal Protection Clause cannot be established by proof of "disparate impact." See Smith v. Boyle, 144 F.3d 1060, 1064 (7th Cir. 1998) ("[T]o be actionable a denial of equal protection must be intentional. It follows that disparate impact–a law's unintentionally bearing harder on one group than another–is not a

permissible basis for finding a denial of equal protection."
(citing numerous cases, <u>inter</u> <u>alia</u>, <u>Washington v. Davis</u>, 426 U.S.
229 (1976); <u>Personnel Administrator v. Feeney</u>, 442 U.S. 256 (1979);
<u>People Who Care v. Rockford Bd. of Educ.</u>, 111 F.3d 528, 534 (7th
Cir. 1997)).  The fact that a state action has a disparate impact
on a protected class may be used as evidence of intentional
discrimination, but cannot alone establish discriminatory intent.
<u>See</u> <u>Smith</u>, 144 F.3d at 1069 (citing <u>Feeney</u>, 442 U.S. at 279 n.24)).

Even if a "disparate impact" theory were available to
plaintiff, she has not presented evidence that the play would have
a negative impact on Italian-Americans.  The play at issue is about
a number of adults, some of whom are of Italian descent, some of
whom have criminal backgrounds, and none of whom bear reasonable
resemblance to plaintiff's son, a seventh-grade student of Italian
descent.  Any negative impact on plaintiff's son is indirect,
through the perpetuation of stereotypes about Italian-Americans in
general.  In the briefs, and in open court, plaintiff's counsel
refers to "studies" supporting the proposition that all persons of
an ethnic group are harmed by negative representations of
individual members of the group, but plaintiff has not identified
any such study nor has anything been introduced into the record
that would permit the court to find a causal relationship between
the play and discriminatory attitudes toward Italian-Americans.  As
the court noted in the hearing, it is implausible to presume,

without any competent proof, that the allegedly-negative characteristics of several Italian-American characters will be imputed to Italian-Americans generally.

Plaintiff's counsel did state in open court that plaintiff voiced her complaints about the play's alleged negative portrayal of Italian-Americans to school officials. Generously construed, this may be an attempt to argue that defendants' indifference to the purportedly discriminatory aspects of the play is evidence of discriminatory intent. However, Supreme Court and Seventh Circuit precedent clearly states that indifference is inadequate to prove discriminatory intent. See, e.g., Feeney, 442 U.S. at 279 ("Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker, in this case a state legislature, selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.") (internal quotations omitted); accord Tuffendsam v. Dearborn County Bd. of Health, 385 F.3d 1124, 1127 (7th Cir. 2004) (reiterating that "an official 'intends' a consequence when he acts because rather than in spite of it.") In addition, plaintiff's counsel was unable to state whether the minor plaintiff would be required to attend the play or whether his mother has requested that defendants excuse him from attending the play. Finally, plaintiff has not rebutted defendants' explanation

of the play's message, which is at least plausible, and cuts against an inference that defendant was deliberately indifferent to plaintiff's concerns.

Under rational-basis review, a classification does not run afoul of the Equal Protection Clause "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Heller, 509 U.S. at 320 (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993)). Defendants have provided a "reasonably conceivable state of facts" in support of the decision to put on the play. As explained in open court, defendants maintain that the play is a pedagogical tool that encourages students to look beyond stereotypes and to judge people according to their actions. While plaintiff disagrees with this characterization of the play, the court need not decide whether defendants' interpretation of the play is "correct" because a state actor's reasoning need not be perfect in order to be afforded deference. See, e.g., Dandridge v. Williams, 397 U.S. 471, 485 (1970).

Second, the irreparable harm plaintiff will suffer absent injunctive relief does not outweigh the irreparable harm defendant will suffer if relief were to be granted.[3] We are mindful of the strong First Amendment implications of the remedy that plaintiff

---

[3] We need not explicitly consider whether the remedy at law is inadequate.

seeks.  The students who will be performing and assisting with the performance of the play, as well as the playwright, have First Amendment rights at stake, and it seems to us that the school district should not be put in a position of being directed by a federal court to possibly violate those rights.

Counsel for defendants represented to the court that plaintiff's son is not required to attend the performance of the play.  When the court inquired of plaintiff's counsel whether plaintiff had informed the school that her son will in fact not be attending the play, counsel stated that he did not know.  The fact that plaintiff has not engaged in this sort of self-help weighs against a finding of irreparable harm.[4]

Finally, the public interest would not be served by a preliminary injunction because the public has an interest in the protection of free expression in our schools.  The public also has an interest in having educators, not federal courts, decide in most instances whether student expression has valid educational purposes.  In Hazelwood School District v. Kuhlmeier, 484 U.S. 260, 273 (1988), the Supreme Court referred to its "oft-expressed view that the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges."  The Court also noted that

---

[4]  Plaintiff's lack of self-help also has implications regarding plaintiff's standing to sue.

a number of lower federal courts have recognized that educators'
decisions with regard to the content of expressive activities such
as dramatic productions are entitled to substantial deference. <u>Id.</u>
at 273 n.7.

Plaintiff has failed to demonstrate that she has met the
requirements for a temporary restraining order or a preliminary
injunction. Therefore, the motion will be denied.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for a temporary
restraining order, which we treat as a motion for a preliminary
injunction, is denied.


DATE:          November 15, 2006



ENTER:         _____

               John F. Grady, United States District Judge